**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000754
30-APR-2013
08:12 AM**

NO. CAAP-11-0000754

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JP JUNIOR TUPITO, aka JP TUPITO, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 10-1-1496)


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant JP Junior Tupito, also known as JP Tupito ("Tupito"), appeals from the October 3, 2011 Judgment of Conviction and Sentence, entered by the Circuit Court of the First Circuit ("Circuit Court").[1] A jury found Tupito guilty of one count of Robbery in the First Degree, in violation of Hawaii Revised Statutes ("HRS") § 708-840(1)(b)(ii),[2] one count of Unauthorized Control of Propelled Vehicle, in violation of HRS § 708-836,[3] and one count of Unauthorized Possession of Confidential Personal Information, in violation of HRS § 708-

---

[1] The Honorable Karen S.S. Ahn presided.

[2] HRS § 708-840(1)(b)(ii) provides that "[a] person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle . . . . [t]he person is armed with a dangerous instrument and . . . . [t]he person threatens the imminent use of force against the person of anyone present with intent to compel acquiescence to the taking of or escaping with the property[.]" HAW. REV. STAT. § 708-840 (Supp. 2012).

[3] HRS § 708-836 provides that "[a] person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent or by changing the identity of the vehicle without the owner's consent." HAW. REV. STAT. § 708-836 (Supp. 2012).

839.55.[4/]

On appeal, Tupito contends that the Circuit Court (1) "plainly erred in failing to sua sponte provide the jury with a specific instruction on eyewitness identification so that the jury's attention would be adequately focused on the identification issues"; (2) "erred in denying Tupito's Motion to Suppress Evidence and Identification [("Motion to Suppress")]"; and (3) erred in entering judgment against him because "[t]here was no substantial evidence to support Tupito's convictions."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Tupito's points of error as follows:

(1) Because this case was pending on appeal when the Hawaiʻi Supreme Court issued its decision in *State v. Cabagbag*, 127 Hawaiʻi 302, 277 P.3d 1027 (2012), this court "appl[ies] the rule then in effect when the cases were tried." *Id.* at 317, 277 P.3d at 1042. At the time of the trial in this case, the judge's duty was "to determine whether the jury's attention was adequately drawn to the identification evidence." *State v. Vinge*, 81 Hawaiʻi 309, 316, 916 P.2d 1210, 1217 (1996) (quoting *State v. Okumura*, 78 Hawaiʻi 383, 405, 894 P.2d 80, 102 (1995)). Whether such an instruction is necessary, rests "within the sound discretion of the trial court." *Cabagbag*, 127 Hawaiʻi at 315, 277 P.3d at 1040.

Here, the credibility of Ansen Nicho ("Nicho"), the complaining witness, and his identification of Tupito were the central issues at trial. Among other references, defense counsel asked during voir dire of a juror's personal experience with misidentification, defense counsel's opening statement challenged Nicho's physical description of Tupito, his cross-examination of Nicho and another witness challenged the same, and, during closing, he again challenged the accuracy of Nicho's

[4/]     HRS § 708-839.55 provides that "[a] person commits the offense of unauthorized possession of confidential personal information if that person intentionally or knowingly possesses, without authorization, any confidential personal information of another in any form, including but not limited to mail, physical documents, identification cards, or information stored in digital form." HAW. REV. STAT. § 708-839.55 (Supp. 2012).

identification.

We conclude, therefore, that it was not plain error in the instant case for the Circuit Court to not, sua sponte, issue a specific eyewitness jury instruction.

(2) Tupito contends that the Circuit Court erred in denying his Motion to Suppress, arguing that the show-up procedure was impermissibly suggestive and that, under the totality of the circumstances, Nicho's identification of Tupito was not sufficiently reliable. At the suppression hearing, the Circuit Court agreed that the show-up was impermissibly suggestive, and we proceed here assuming the same.

The reliability of an eyewitness identification of a suspect is evaluated under the totality of the circumstances. *Okumura*, 78 Hawai'i at 391, 894 P.2d at 88. The factors to be considered include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation[.]

*State v. Padilla*, 57 Haw. 150, 154, 552 P.2d 357, 360 (1976) (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

Nicho had ample opportunity to clearly view the man who robbed him. He spoke with Tupito in a lighted parking lot for roughly three minutes, before joining Tupito and his partner in the car. They drove around for the next thirty minutes; although the interior lights were off, Nicho could still see the two men. They later stopped near a house. Nicho testified that one of the men pointed a gun at him. The area was dark, but Nicho affirmed that there was "lighting enough to see the face of the person," explaining "[i]n the car--get lights in the car, but I recognize who's the one pointing with the gun." Defense counsel questioned Nicho about his recognition of that person. Nicho responded "I saw the person, and I recognize him from what I see on his face, around. He got—hair is short, like haircut short, then he wearing hat."

Nicho identified Tupito with certainty as the one who brandished the gun. Honolulu Police Officer Zachary Plevel, who

escorted Nicho to the show-up, testified that Nicho identified Tupito as "the guy with the gun," and that "[t]here was no hesitation. As soon as we . . . pulled up to the [show-up] location, he identified him."

The length of time between the offense and the identification does not render the identification suspect. It was on the order of one hour between the time that Nicho was threatened with the gun and Nicho's in-person identification of Tupito. *Cf. In re Doe*, 107 Hawaiʻi 439, 451, 114 P.3d 945, 957 (App. 2005) (recognizing that a period of several weeks neither favors nor casts doubt on reliability, and suggesting that a mere two-hour span is not particularly significant).

Considering the totality of the circumstances, and even in light of discrepancies in Nicho's description of his assailant and Tupito's actual height, weight, and wear, we conclude that it was highly unlikely that Nicho mistakenly misidentified his assailant. Therefore, we conclude that Nicho's identification of Tupito as his assailant was sufficiently reliable to present to the jury and the Circuit Court did not err in denying the motion to suppress. *See State v. Araki*, 82 Hawaiʻi 474, 486, 923 P.2d 891, 903 (1996) ("Thus, the weight of the identification testimony and the credibility of the witnesses were for the jury to determine. The defense counsel could cross-examine the witnesses, point out any suggestibility in the identification procedure, and present countervailing testimony such as alibi." (quoting *State v. Masaniai*, 63 Haw. 354, 365, 628 P.2d 1018, 1026 (1981)).

(3) Tupito contends that his convictions must be overturned for lack of substantial evidence in support. In particular, Tupito argues that Nicho's testimony "was rife with contradictions and inconsistencies," and, therefore, was not credible evidence upon which a conviction may stand.

To the contrary, however, there was substantial evidence to support the jury's decision. Whether Nicho's testimony was contradictory or inconsistent, or whether the jury should have believed Tupito's version of events, was a matter peculiarly within the jury's province to weigh the witnesses'

testimony and to evaluate their credibility.  The jury clearly credited Nicho's testimony over Tupito's, and it is not our place to second-guess its assessment.  *See State v. Mattiello*, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) ("Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the trier of fact's findings." (quoting *Tsugawa v. Reinartz,* 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974) (internal quotation marks and brackets omitted))).

Considering the evidence, as we must, in the light most favorable to the State, there was substantial evidence to support Tupito's convictions.

Therefore, the Circuit Court's Judgment of Conviction and Sentence entered on October 3, 2011 is affirmed.

DATED:  Honolulu, Hawai'i, April 30, 2013.


On the briefs:

Kevin A. Souza,
for Defendant-Appellant.


Donn Fudo,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

5